IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CORNETT MANAGEMENT COMPANY, LLC,
a corporation,

        Plaintiff,

v.                             Civil Action No. 5:04CV22
                                        (STAMP)

LEXINGTON INSURANCE COMPANY,
a foreign corporation,
FIREMAN'S FUND INSURANCE COMPANY,
a foreign corporation,
BRADY RISK MANAGEMENT, INC.,
a foreign corporation and
HARTAN BROKERAGE, INC.,
a foreign corporation,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**DENYING CORNETT'S MOTION FOR SUMMARY JUDGMENT**
**AS TO POLICY I WITH LEXINGTON,**
**BUT GRANTING THE MOTION AS A MATTER OF LAW**
**AS TO THE DECLARATORY JUDGMENT ACTION ON POLICY II,**
**GRANTING LEXINGTON'S CROSS-MOTION**
**FOR SUMMARY JUDGMENT AS TO POLICY I,**
**DENYING CORNETT'S MOTION FOR**
**SUMMARY JUDGMENT AS TO FIREMAN'S FUND,**
**GRANTING SUA SPONTE SUMMARY JUDGMENT**
**IN FAVOR OF FIREMAN'S FUND,**
**DENYING BRADY'S MOTION TO DISMISS,**
**DENYING BRADY'S MOTION FOR A MORE DEFINITE STATEMENT,**
**DENYING HARTAN'S MOTION TO DISMISS,**
**DENYING AS MOOT BRADY'S MOTION**
**TO AMEND SCHEDULING ORDER AND**
**SCHEDULING STATUS AND SCHEDULING CONFERENCE**


I.  Procedural History

     This action was initially filed in the Circuit Court of

Marshall County, West Virginia against defendants, Fireman's Fund

Insurance Company ("Fireman's Fund") and Lexington Insurance

Company ("Lexington"), alleging breach of contract, bad faith and unfair trade practices against both defendants. The action was removed to this Court and on April 21, 2005 this Court entered an agreed order permitting plaintiff, Cornett Management Company, LLC ("Cornett"), to amend its complaint to assert causes of action against Brady Risk Management, Inc. ("Brady") and Hartan Brokerage, Inc. ("Hartan"). The amended complaint was filed on April 25, 2005, and added new claims against "Brady and/or Hartan" for negligence, breach of contract and breach of fiduciary duty.

On May 17, 2005, Cornett filed a motion for summary judgment against Fireman's Fund and a separate motion for summary judgment against Lexington. Cornett's summary judgment motion against Fireman's Fund was not fully briefed and this Court entered an order on November 14, 2005, directing the parties to brief the motion and setting a briefing schedule.[1] Defendant Lexington, on the other hand, filed a response to the summary judgment motion against it on June 1, 2005. In addition, Lexington filed a cross-

---

[1]This Court has since entered an order extending the briefing schedule and defendant Fireman's Fund has filed a response and Cornett a reply. In addition, Fireman's Fund filed a motion for leave to file a cross-motion to Cornett's summary judgment motion. Fireman's Fund's motion for leave to file a cross-motion was deferred by this Court. However, finding that Cornett's motion for summary judgment together with briefs in support of and in opposition thereto has provided ample notice to both parties that they must come forward with all evidence regarding Cornett's policies with Fireman's Fund, this Court recognizes its power to grant summary judgment <u>sua sponte</u>. <u>See e.g.</u> <u>United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n</u>, 873 F.2d 731, 735 (4th Cir. 1989).

motion for summary judgment against Cornett. On June 13, 2005, Cornett filed a reply in support of its summary judgment motion and a response to Lexington's cross-motion. On June 24, 2005, Lexington filed a surreply in opposition to Cornett's summary judgment motion and a reply in support of its own cross-motion. Accordingly, Cornett's motion for summary judgment against Lexington and Lexington's cross-motion for summary judgment against Cornett are now fully briefed and ripe for consideration.

Following the entry of Cornett's second amended complaint, newly-joined defendant Brady filed a "motion to dismiss or, in the alternative, a motion for a more definite statement," to which the plaintiff filed a response in opposition. In addition, co-defendants Fireman's Fund and Lexington filed responses in opposition to Brady's motions. Brady filed a reply addressing these responses.

Newly-joined defendant Hartan also filed a motion to dismiss, to which the plaintiff filed a response and Hartan filed a reply. Both Brady and Hartan's motions to dismiss are fully briefed and ready for consideration.

## II. Facts

Plaintiff Cornett owns and operates restaurants, including a Hooters restaurant in Charleston, West Virginia ("Charleston Hooters"). Cornett was insured by two employer's liability policies issued by Lexington, identified as Policy Number 1052332

("Policy I") and Policy Number 1321224 ("Policy II"). Policy I covered "claims" made between May 4, 2001 until May 4, 2002 and Policy II covered "claims" made between from May 4, 2002 until May 4, 2003. The term "claim" is defined the same in both contracts and will be discussed in detail below. Both policies carried liability limits of $1,000,000.00 and provided that Lexington would defend and indemnify Cornett against certain claims for discrimination, sexual harassment, wrongful termination and workplace torts. (Pl.'s Mot. Summ. J. Against Lexington Ex. E.)

In addition, Cornett was insured by Fireman's Fund under two policies covering a period from January 1, 2000 until January 1, 2002 (collectively "Fireman's Fund policies"). (Fireman's Resp. Pl.'s Mot. Summ. J. Against Fireman's Fund at 2.) These policies were identical and consisted of a commercial general liability coverage form, a multicover endorsement and an employment-related practices exclusion. The policies provided for personal and advertising injury liability coverage with $1,000,000.00 limits. (Id. at 3.)

On May 20, 2002, a former employee of the Charleston Hooters, Terri Reynolds ("Reynolds"), and five other Charleston Hooters' employees filed a complaint for sexual harassment against Cornett in the Circuit Court of Kanawha County, West Virginia. Plaintiffs were joined by a seventh employee and ultimately filed a "third

amended complaint" to include additional allegations of harassment. (Pl.'s Mot. Summ. J. at 3.)

The complaint in the employee's suit discusses the factual basis for each of the plaintiffs' counts. Plaintiff Reynolds alleged that employee, Joseph F. Hernandez ("Hernandez"), began harassing Reynolds on or about July 2000. (Pl.'s Mot. Summ. J. Ex. A.) On April 17, 2002, Reynolds called Cornett's human resources hotline to report a particular incident of harassment by Hernandez that allegedly occurred on April 14, 2002. (Pl.'s Mot. Summ. J. at 2.)

Plaintiffs, Amanda Brown ("Brown") and Kari Savilla ("Savilla"), alleged that on or about November 25, 2001, the Charleston Hooters' general manager at that time, Jamie Harmon ("Harmon"), conducted a strip search of Brown and Savilla.

Plaintiff, Deidra Dingess ("Dingess"), alleged that, beginning in September 2000, she was harassed by James Cornett, Jr. Specifically, Dingess alleged that Mr. Cornett made inappropriate advances toward her, called her names and spread false rumors about her. Dingess also alleged that sometime after July 2000, Hernandez harassed Dingess by making obscene suggestions and inappropriate comments to her.

Plaintiff, Misty Haney ("Haney"), alleged that Hernandez repeatedly harassed her while she worked at the Charleston Hooters. Specific dates of harassment are alleged beginning in the Spring of

2002, when Hernandez made inappropriate comments to Hernandez and made unwelcome comments about her personal life.

Plaintiff, Christina Miller ("Miller"), also alleged she was harassed by Hernandez, but did not give specific dates.

Plaintiff, Scarlett Belcher ("Belcher"), alleged several instances of harassment by Mr. Cornett and Hernandez. In addition, Belcher alleged that on or about July 1, 2002, then Charleston Hooters' manager, James Lawrence, retaliated against Belcher by embarrassing her at meetings and changing her schedule without notice.

On April 17, 2002, following Ms. Reynolds call to the human resources hotline, Cornett's human resources managers met with Reynolds and reported the incident to Brady Risk Management, who allegedly brokered the Insurance Policy with Lexington. (Pl.'s Mot. Summ. J. at 2.) Reynolds resigned from her position on April 25, 2002, explaining her concerns and frustration with Hernandez as well as Cornett's response to her report of sexual harassment.

Lexington defended Cornett in the underlying action pursuant to Policy II, but not Policy I. In March 2003, Lexington sent to Cornett a reservation of rights letter indicating that the retroactive date provision in Lexington's policies with Cornett relieved Lexington of its duty to defend against allegations made by Reynolds and possibly other plaintiffs who complained of harassment before May 4, 2001. (Pl.'s Mot. Summ. J. Ex. G.)

Cornett alleges that the costs of defense of the underlying action exceeded the $1,000,000.00 limit of Policy II. Accordingly, Cornett argues it was forced to pay the remaining defense costs and to settle the underlying action in 2003. (Pl.'s Mot. Summ. J. at 7.)

In addition, Cornett alleges that it immediately gave notice of the above-mentioned claims to Fireman's Fund through a letter dated May 22, 2002. Fireman's Fund responded that Cornett's policies with Fireman's Fund did not provide coverage for claims asserted against Cornett in <u>Reynolds</u>. Cornett seeks summary judgment against Fireman's Fund on its second amended complaint requesting damages for Fireman's Fund's refusal to defend or indemnify under the Fireman's Fund policies.

### III. <u>Legal Standards</u>

#### A. <u>Summary Judgment</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come

forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson,
"Rule 56(e) itself provides that a party opposing a properly
supported motion for summary judgment may not rest upon the mere
allegations or denials of his pleading, but . . . must set forth
specific facts showing that there is a genuine issue for trial."
Id. at 256.   "The inquiry performed is the threshold inquiry of
determining whether there is the need for a trial -- whether, in
other words, there are any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably be
resolved in favor of either party."   Id. at 250; see also
Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.
1979)(Summary judgment "should be granted only in those cases where
it is perfectly clear that no issue of fact is involved and inquiry
into the facts is not desirable to clarify the application of the
law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394
(4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule
56(c) mandates the entry of summary judgment, after adequate time
for discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element

8

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

B. <u>Motion to Dismiss</u>

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. <u>Advanced Health Care Servs., Inc. v. Radford Community Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" <u>Id.</u> at 143-44 (quoting <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969)); <u>see also</u> <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for

resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. Rogers, 883 F.2d at 325. A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that plaintiff does not have a claim and that no set of facts would support plaintiff's claim. 5A Wright & Miller, supra § 1357, at 344-45.

## IV. Discussion

### A. Cornett's Motion for Summary Judgment Against Lexington and Lexington's Cross-Motion for Summary Judgment

Cornett seeks summary judgment declaring that Lexington had a duty to defend and indemnify Cornett in the underlying claim under

both Policy I and Policy II.  First, Cornett seeks summary judgment that coverage existed under Policy II requiring Lexington to defend the underlying claim.  Specifically, Cornett argues that most of the plaintiffs in the underlying action made claims of sexual harassment no earlier than May 22, 2002 when they joined Reynold's complaint against Cornett.  Second, Cornett seeks summary judgment that coverage existed under Policy I requiring Lexington to defend the underlying claim because a "claim" was made by Reynolds between the May 4, 2001 and May 4, 2002 coverage period of Policy I.

Lexington responds that it is entitled to summary judgment on the declaratory judgment action regarding coverage under Policy I. Specifically, Lexington argues that Reynolds did not make a "claim" as defined by the terms of that policy until after May 4, 2002. Lexington argues that, even if Reynolds' resignation letter or her call to Cornett's human resource hotline constituted a "claim," a single indemnity amount would still apply because the entire underlying action constitutes only a single "Insured Event." Finally, Lexington argues that the doctrines of waiver and estoppel preclude Cornett from coverage under both Policy I and Policy II.

The terms applicable to this action are identical for both Policy I and Policy II with the exception of the coverage dates.[2] The indemnity clause for both policies states in pertinent part:

---

[2]As stated above, Policy I's coverage dates run from May 4, 2001 to May 4, 2002 and Policy II's coverage dates run from May 4, 2002 to May 4, 2003.

11

1. Subject to all of the terms, limitations, conditions, definitions, exclusions and other provisions of this policy, **we** will pay all **Loss Amounts** that the **Insured** is legally obligated to pay because of **Insured Event** to which this insurance applies. The amount **we** will pay is limited as described in item 3 of the Declarations and in the Sections of this policy dealing with **LIMITS OF INSURANCE, DEFENSE, DEDUCTIBLE** and **OTHER INSURANCE.**

2. This policy applies only if:
   a. **Claim** because of an **Insured Event** is first made against any **Insured** during the **Policy Period** as set forth in Item 2 of the Declarations; and
   b. the **Insured Event** out of which the **Claim** arises does not happen or commence prior to the Inception Date of the first Employment Practices Liability Policy issued by **us** to the **Named Insured**, or after the **Policy Period** has ended.

(Def. Lexington's Cross-Motion Ex. 4 at § II.A.)  The defending

clause in both policies provides:

1. **We** have the right and duty to defend any **Claim** because of an **Insured Event** to which this insurance applies made or brought against any **Insured(s)**. **We** have the right to select defense counsel with the consent of the **Insured**, which consent shall not be unreasonably withheld.

(Def. Lexington's Cross-Motion Ex. 4 at § II.B.)  The policies

further state that:

A. Subject to the other provisions of this policy, including those regarding **Limited** and **Extended Reporting Periods**, if applicable, this policy applies only to **Claims** first made against any **Insured** during the **Policy Period.**

B.   A **Claim** shall be considered to be made on the
     earlier of:
1.   The date any **Insured** receives a
     written notice of a **Claim** being made
     against any **Insured** seeking damages
     covered by this policy; or
2.   The date **we** make a settlement on
     account of an **Insured Event** but in
     advance of written **Claim** being made.

(Def. Lexington's Cross-Motion Ex. 4 at § VI.A and VI.B.)   Both

policies define an insured event:

> **Insured Event** means (1) **your Employee** or former **Employee**,
> or an applicant for employment with **you**, alleging
> **Discrimination** by an **Insured**, or (2) **your Employee** or
> former **Employee** alleging **Sexual Harassment** by an **Insured,**
> **or (3) your Employee** or former **Employee** alleging **Wrongful**
> **Termination** by an **Insured**, (4) **your Employee** or former
> **Employee** or an applicant for employment with **you** alleging
> **Workplace Torts** by an **Insured**.  Alleging means lodging an
> oral or written complaint or charge with **your** management
> or **Supervisory Employee(s)** or with **your** corporate legal
> or human resources departments.

(Def. Lexington's Cross-Motion Ex. 4 at § VII.E.)   Similarly, both

policies define a claim:

> **Claim** means a written demand or notice received by an
> **Insured** in which damages likely to be covered by this
> policy are alleged.   **Claim** includes a civil action, an
> administrative proceeding, alternative dispute resolution
> proceeding, or an action brought by a person or entity
> acting on behalf of an **Employee(s)** of the **Insured** to
> which **you** must submit or to which **you** submit with **our**
> consent.  **Claim** shall include a proceeding for injunctive
> or non-monetary relief.  **Claim** shall not include labor or
> grievance arbitration subject to a collective bargaining
> agreement.   A class action lawsuit is considered one
> **Claim**.

(Def. Lexington's Cross-Motion Ex. 4 at § VII.A.)

1.  <u>Declaratory Judgment Action Regarding Policy I</u>

The plaintiff argues that Reynold's April 17, 2002 telephone call and her April 25, 2002 resignation letter constitute a claim triggering coverage under Policy I.  (<u>See</u> Pl.'s Mot. for Summ. J. Against Lexington at 13.)  This Court disagrees.

First, Reynolds' April 25, 2002 resignation letter does not constitute a claim because the letter does not contain an "allegation of damages" as required by Policy I.  The plaintiff argues that the term "damages" is ambiguous.  This Court disagrees.

Again, this Court begins with the principle that a term is not ambiguous simply because parties disagree as to its construction.  <u>Berkeley County Pub. Serv. Dist.</u>, 162 at 200.  Indeed, both parties turn to <u>Black's Law Dictionary</u> for support, but <u>Black's Law Dictionary</u> does not help Cornett's cause.  For example, the sixth edition specifically distinguishes between "damage" and "damages," defining damage as:

> [l]oss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property.  <u>The word is to be distinguished from its plural, "damages", which means a compensation in money for a loss or damage</u>.

<u>Black's Law Dictionary</u> 389 (6th ed. 1990)(emphasis added).

Similarly, both the seventh and eighth edition of <u>Black's Law Dictionary</u> define "damage" as a "[l]oss or injury to person or property," and "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." <u>Black's Law</u>

<u>Dictionary</u> 393 (7th ed. 1999); <u>Black's Law Dictionary</u> 416 (8th ed. 2004). In both editions, the word damages is not ambiguous, but clearly related to <u>compensation</u> for loss or damage rather than the loss or damage.

Turning now to the April 25, 2002 resignation letter, Reynolds states:

> Regrettably, I am writing to tender my resignation from Cornett Management Company, effective immediately. I have been extremely disappointed in how the company has handled my complaints about Joe Hernandez. The company has conceded he is a harasser (by deciding to terminate him as a result of my complaints), but decided not to terminate him immediately. Instead, the company is keeping him on for another week, has scheduled me to work with him (which is even more difficult now that he knows he might be fired because of the way he has treated me), and you have put me on a schedule that you know I cannot work because of my childcare arrangements. In addition, when I returned to work on April 24, 2002, Joe Hernandez had removed my mailbox, marked me off the schedule, and had new locks put on the front door of the restaurant. This confirms my feelings that the company is insensitive to my concerns, and is more concerned about staffing shifts and maximizing profits than looking out for the admittedly legitimate concerns of a loyal employee of eight years. I feel that I have been through too much to have to put up with these intolerable conditions any longer.

This Court agrees with Lexington's surreply in which it argues that the letter asserts several potential causes of action, but no allegations of "damages likely to be covered by this policy." In other words, there is no allegation for <u>compensation</u> for loss or damage.

In finding that the letter is not a "claim" under Policy I, this Court is supported by examples used to illustrate the meaning

of "claim" for purposes of the policy:  "**Claim** includes a civil action, an administrative proceeding, alternative dispute resolution proceeding, or an action brought by a person or entity . . . ."  (Def. Lexington's Cross-Motion Ex. 4 at § VII.A.)  These examples each constitute formal proceedings in which allegations for compensation are required.  Reynolds' April 25, 2002 resignation letter does not constitute such a proceeding and has little in common with a "civil action" or an "administrative proceeding" or an "alternative dispute resolution."

This Court acknowledges that Reynold's April 25, 2002 resignation letter is an "insured event" under both policies -- both Cornett and Lexington agree.  However, it is not a "claim" as defined by either policy.

Second, the plaintiff's April 17, 2002 telephone call does not constitute a "claim" pursuant to Policy I because, again, she did not alleged damages as explained above.  In addition, the call was not in writing.  The plaintiff argues that a claim need not be in writing and that the call constitutes oral notice as contemplated by the policy.  However, the plaintiff's position contradicts the plain language of Policy I.  Policy I states that a claim shall be considered made when "any insured <u>receives a written notice</u> of a claim being made." (Def. Lexington's Cross-Motion Ex. 4 at § VI.B.)  Thus, "notice" is modified by the word "written."

Moreover, Policy I defines "claim" as "a written demand or notice."  As other courts have noted, an adjective preceding a series of nouns generally modifies every noun in the series.  <u>See e.g.</u> <u>United States Fidelity & Guaranty Co. v. Fireman's Fund Ins. Co.</u>, 896 F.2d 200, 203 (6th Cir. 1990); <u>Golf Course Superintendents Ass'n v. Underwriter's at Lloyd's, London</u>, 761 F. Supp. 1485, 1490 (D. Kan. 1991).  Based on this general rule of construction as well as the phrase "written notice" previously cited from § VI.B of Policy I, this Court believes Policy I required notice to be in writing.  It should be noted that the phrase "written demand or notice" is not ambiguous simply because the parties disagree as to its construction.  <u>See</u> <u>Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America</u>, 162 S.E.2d 189, 200 (W. Va. 1968)("The mere fact that parties do not agree to the construction of a contract does not render it ambiguous.").  Accordingly, the telephone call cannot be considered a "claim."

A "claim" was eventually made by Reynolds when her suit was filed on May 20, 2002 in Circuit Court of Kanawha County, West Virginia.  However, this claim was not made within the coverage period of Policy I which concluded on May 4, 2002.  Therefore, Cornett is not entitled to coverage under Policy I and summary judgment should be granted in part.[3]

_____

[3]As explained in the next section, summary judgment in favor of Lexington may only be granted in part because issues of material fact exist as to claims made as to Policy II regarding breach of

Lexington makes further arguments in support of its cross-motion for summary judgment relating to estoppel and waiver. Because this Court finds no coverage under Policy I, it need not address whether estoppel or waiver are applicable in this case. In addition, Cornett anticipates in its motion for summary judgment against Lexington that Lexington will argue coverage was not required under the retroactive clause in Policies I and II. Lexington does not raise the retroactive clause in its cross-motion or briefs in response to Cornett. Indeed, Lexington indicates that it defended Cornett under Policy II. Accordingly, this Court does not address the retroactive clauses in Policy I or Policy II.

2. <u>Policy II</u>

With regard to Policy II, Cornett 's second amended complaint alleges that "Lexington breached its duty to defend and indemnify [Cornett] by causing and directing the attorneys it retained to defend [Cornett] to engage in extensive and unnecessary discovery and litigation disputes which consumed much of the coverage available to indemnify [Cornett] against claims." (Second Am. Compl. ¶ 53.) In addition, Cornett alleges that Lexington breached its duty by retaining both out-of-state and local counsel, which resulted in "duplicative and excessive" fees and costs. <u>Id.</u> ¶ 54. Cornett also alleges Lexington breached its duty by continuing litigation long after the need to reach an out-of-court settlement

contract, common law bad faith and unfair trade practices.

had become apparent.  Id. ¶ 55.  These allegations of excessive costs and fees are repeated in the plaintiff's bad faith and unfair trade practices claims.

Issues surrounding Policy II were not squarely addressed in the briefs filed by either Cornett and Lexington.  It appears from the briefs and from Lexington's actions that it concedes that Lexington was obligated to provide a defense and indemnity under Policy II, which it did.  Accordingly, this Court grants summary judgment as a matter of law in favor of Cornett on its declaratory judgment action regarding Policy II.

B.    Cornett's Motion for Summary Judgment Against Fireman's Fund

Cornett seeks summary judgment against Fireman's Fund on its second amended complaint requesting damages for Fireman's Fund's refusal to defend or indemnify under the Fireman's Fund policies. Specifically, Cornett argues that Fireman's Fund was obligated to defend and indemnify Cornett in Reynolds because two plaintiff's claimed they had been falsely imprisoned or unlawfully detained on or about November 25, 2001.  Moreover, Cornett argues that if at least one of the claims in Reynolds is covered, Fireman's Fund had a duty to defend and indemnify Cornett as to all of the claims in Reynolds.

Fireman's Fund responds that the Fireman's Fund policies contained exceptions to coverage which excluded virtually any claim arising out of the employment relationship, including an exclusion

for coverage of personal injury.  For reasons stated below, this Court finds Fireman's Fund was not required by the terms of the Fireman's Fund policies to issue Cornett for claims made in Reynolds.

The relevant terms of the Fireman's Fund policies are as follow:

> **Commercial General Liability Coverage Form**
> Policy Amendment General Liability
>
> . . .
>
> Throughout this policy the words **you** and **your** refer to the Named Insured shown in the Declarations . . .
>
> The word **insured** means any person or organization qualifying as such WHO IS AN INSURED (SECTION II).
>
> . . .
>
> **Section I - Coverages**
>
> . . .
>
> **Coverage B.  Personal and Advertising Injury Liability**
>
> 1.    **Insuring Agreement**
>
>> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this coverage part applies. We will have the right and duty to defend any suit seeking these damages.  We may at our discretion investigate any occurrence or offense and settle any claim or suit that may result.

(Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Commercial General Liability Coverage Form" at 1-4.)   In addition, the policies provide:

> b.   This insurance policy applies to:
>
>> (1)   **Personal injury** caused by an offense arising out of your business, excluding advertising, publishing, b r o a d c a s t i n g   o r telecasting done by or for you;
>>
>> (2)   **Advertising injury** caused by an offense committed in the course of advertising your goods, products or services.
>>
>> But only if the offense was committed in the **coverage territory** during the policy period.

(Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Commercial General Liability Coverage Form" at 4.)   Moreover, the policies provide:

> 2.   **Exclusions**
>
> This insurance does not apply to:
>
> a.   **Personal Injury** or **Advertising injury**
>
>> (1)   Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Commercial General Liability Coverage Form" at 4.)   Additional exclusions are

added to this section through a multicover endorsement which states that coverage does not apply to personal or advertising injuries:

> (5) Arising out of **Discrimination** directly or indirectly related to the past employment, employment or prospective employment of any person or class of person by any insured; or

> (6) Arising out of **Discrimination** by or at your direction or with your knowledge or consent; or

(Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Multicover" at 1.) The policy has a definition section which includes the following definitions:

> 1. **Advertising injury** means injury arising out of one or more of the following offenses:

> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> b. Oral or written publication of material that violates a person's right of privacy;

> c. Misappropriation of advertising ideas or style of doing business; or

> d. Infringement of copyright, title or slogan.

. . .

10. **Personal injury** means injury other than bodily injury, arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

        . . .

    d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication of material that violates a person's right to privacy; . . .

    **Personal injury** also means embarrassment or humiliation, mental or emotional distress, physical illness, physical impairment, loss of earning capacity or monetary loss, which is caused by **Discrimination**.

        . . .

16. **Discrimination** means the unlawful treatment of individuals based on race, color, ethnic origin, gender, or religion.

(Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Commercial General Liability Coverage Form" at 9.) In addition, the following endorsement was also included as part of the Fireman's Fund policies:

    **Commercial General Liability Coverage Part**

2.    The following exclusion is added to COVERAGE B (Section 1):

    c.    **Personal injury** arising out of any:

        . . .

> (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions . . . .

(Pl. Mot. Summ. J. Against Fireman's Fund Ex. C, "Employment-Related Practices Exclusion" at 1.)

While the general provisions of the Fireman's Fund policies arguably provide coverage for at least some of the claims raised in the Reynolds action,[4] the employment-related practices exclusions clearly bar Cornett from coverage for all the claims raised in Reynolds. By their plain language, the policies exclude coverage for claims of person injuries arising out of "any: . . . employment-related practices, policies, acts or omissions." (Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Employment-Related Practices Exclusion" at 1.) Moreover, the exclusion specifically names defamation, harassment, humiliation and discrimination of employees as excluded from coverage. Id. Accordingly, this Court finds no coverage pursuant to the terms of the Fireman's Fund Policy for claims made in the Reynold's action, and therefore, no viable claims by Cornett as to Fireman's Fund for breach of contract, common law bad faith or bad faith insurance practices.

---

[4]The plaintiff argues the claims for false imprisonment are applicable.

Nor is this Court convinced by Cornett's argument that Fireman's Fund was required to provide a defense and indemnification to Cornett pursuant to coverage for an "advertising injury." Specifically, Cornett argues that certain claims in Reynold's were based on the fact that the manager who allegedly mistreated employees "advertised" the incident to other employees. As stated above, an "advertising injury" is defined in the policy as "caused by an offense committed in the course of advertising your goods, products or services" (Pl.'s Mot. Summ. J. Against Fireman's Fund Ex. C, "Commercial General Liability Coverage Form" at 4.) By definition, none of the alleged injuries in Reynold's were "advertising injuries," and therefore, coverage for "advertising injuries" was not triggered.

Although Fireman's Fund's motion for leave to file a cross-motion was deferred, this Court has the authority to grant summary judgment in favor of Fireman's Fund having found no coverage under the applicable policies. As stated above, a district court may enter summary judgment <u>sua sponte</u> so long as it ensures that the party against whom judgment is entered has had ample notice that it must come forward with all of its evidence. <u>United States Dev. Corp</u>., 873 F.2d at 735. Here, Cornett's motion for summary judgment as well as its declaratory judgment action against Fireman's Fund turns on whether it was entitled to coverage under the Fireman's Fund policies. By fully briefing its motion for

summary judgment, Cornett had a full and fair opportunity to develop and present facts and legal argument in support of its position with regard to coverage. <u>See</u> <u>Victus, Ltd. v. Collezione Europa U.S.A. Inc.</u>, 26 F. Supp. 2d 772, 775 (M.D.N.C. 1998). Accordingly, this Court finds summary judgment in favor of Fireman's Fund is appropriate.

As a final matter, because this Court finds no coverage pursuant to the Fireman's Fund policies, it need not address whether proper notice was given. Similarly, this Court need not determine whether Cornett should be barred from recovery in this action based on principles of waiver or estoppel.

C.   <u>Motions to Dismiss</u>

Cornett's second amended complaint against Brady and Hartan turns on the contention that either Lexington or Fireman's Fund, or both, were not timely notified by Brady and/or Hartan of Cornett's underlying claim. Moreover, the complaint alleges that Brady and/or Hartan had a duty to plaintiff Cornett to timely notify the insurers Lexington and Fireman's Fund of the underlying claim. Accordingly, Cornett argues that Brady and/or Hartan's failure to timely notify Lexington and Fireman's Fund is actionable.

It should be noted that this Court's recognizes that its holding with regard to the Fireman's Fund policies might possibly affect Cornett's allegations against Brady and Hartan. For obvious reasons, the implications of this Court's holding have not been

26

explored by the parties and it would be premature for this Court to do so now. Instead, this Court addresses both motions to dismiss pursuant to the strict standards of Federal Rule of Civil Procedure 12(b)(6), accepting the factual allegations contained in the complaint as true. <u>Advanced Health Care Servs.</u>, 910 F.2d at 143. This Court will not convert the motions to dismiss into motions for summary judgment at this time.

    1.  <u>Brady's Motion to Dismiss or for More Definite Statement</u>

As stated above, Brady filed a motion to dismiss or, in the alternative, a motion for a more definite statement. Brady argues that it is not directly liable for the alleged acts or omissions in stated in Cornett's second amended complaint because Brady was acting merely as an agent on behalf of disclosed principals, Lexington and Fireman's Fund. Accordingly, Brady argues that any liability at issue in Brady's second amended complaint must be imputed to Lexington and Fireman's Fund. In the alternative, Brady argues that it is entitled to a more definite statement pursuant to Rule 12(e) because Cornett's second amended complaint does not sufficiently distinguish between the allegedly liable actions of Brady and Hartan.

Co-defendant's Lexington and Fireman's Fund also filed responses in opposition to Brady's motion to dismiss. Lexington maintains that Brady was never an agent for Lexington, and that Brady's motion to dismiss, which relies on principles of agency,

must be denied accordingly.[5]  Similarly, Fireman's Fund maintains

that Brady risk was never a disclosed agent of Fireman's Fund.

Fireman's Fund also notes that plaintiff Cornett asserts a claim

against Brady for breach of contract between Brady and Cornett, not

merely Cornett and Fireman's Fund.  Moreover, Fireman's Fund argues

that Brady's reliance on West Virginia Code § 33-12-22 is misplaced

because that section does not apply to a policy procured through a

surplus line broker, which Fireman's Fund alleges is the type of

policy at issue.  Finally, Fireman's Fund indicates that it

anticipates filing a crossclaim against Brady for contribution

and/or implied indemnity because Brady failed to provide timely

notice.

After reviewing the second amended complaint as well as

parties briefs on Brady's motion to dismiss, this Court finds the

motion must be denied.  As stated above, a court must accept the

factual allegations contained in the complaint as true.  Advanced

Health Care Servs., Inc., 910 F.2d at 143.  Here, the plaintiff

alleges facts that, if true, could support a finding that Brady had

a duty to Cornett, that such duty was breached, and that damages

flowed from the breach of duty.  Specifically, plaintiff alleges

that Brady developed and offered for sale insurance packages that

included policies issued by co-defendants Lexington and Fireman's

---

[5]Lexington further indicates that it believes Brady's
contention to be so misleading as to be sanctionable.  (See
Lexington's Resp. at 4.)

Fund. (Second Am. Compl. ¶ 8.) The plaintiff further alleges that Brady held itself out as an insurance specialist and that Cornett relied upon Brady to communicate with various insurance carriers. (Second Am. Compl. ¶¶ 10 and 11.) If Brady was an agent of Cornett or acted beyond the scope of its agency with either Fireman's Fund or Lexington, and Brady failed to handle the reported claim appropriately as alleged, then Brady could be liable. Accordingly, this Court finds Brady's motion to dismiss must be denied.

In addition, this Court finds no merit in Brady's alternative motion for a more definite statement. The pleading standard of the Federal Rules of Civil Procedure is "not onerous." Id. at 348 (quoting Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 764 (4th Cir. 2003)). A complaint need not make a case against a defendant or forecast evidence sufficient to prove an element of the claim. Chao at 349. If detail sought by a motion for a more definite statement is obtainable through discovery, a motion for a more definite statement should be denied. Beery v. Hitachi Home Electronics (America), Inc., 157 F.R.D. 477, 480 (C.D. Cal. 1993). This Court rejects Brady's argument that it has not been sufficiently put on notice. Brady is aware of the nature of the plaintiff's claim as well as specific factual allegations on which the plaintiff plans to rely. Accordingly, Brady's alternative motion for a more definite statement pursuant to Rule 12(e) must also be denied.

2. <u>Hartan's Motion to Dismiss</u>

Hartan argues in its motion to dismiss that Cornett's second amended complaint relies on the premise that Hartan did not provide timely notice.  Hartan argues that the second amended complaint fails to allege that Hartan received notice of the underlying claims any time prior to March 2003 and fails to allege facts supporting the contention that Hartan did not timely notify Fireman's Fund once the underlying claims were received by Hartan. Moreover, Hartan argues that there is no allegation that it had a duty to provide notice of the underlying claim to Lexington.

In its response, Cornett argues that it has not had an opportunity to fully discover the relationship between Hartan and Brady for purposes of liability.  However, Cornett alleges that "because [Hartan and Brady] appear to have been acting as agents/subagents of each other at various times, [Cornett] had no choice but to identify both [Hartan and Brady] in its pleadings." (Pl.'s Resp. Hartan's Mot. to Dismiss at 6.)

This Court does not find the simultaneous mentioning of Brady and Hartan to be problematic for purposes of a motion to dismiss under Rule 12(b)(6).  Moreover, this Court finds that the plaintiff's second amended complaint alleges the same facts to support its complaint against Hartan as it did against Brady. Thus, the plaintiff alleges that Hartan developed and offered for sale insurance packages that included policies issued by co-

defendants Lexington and Fireman's Fund. (Second Am. Compl. ¶ 8.) The plaintiff further alleges that Hartan held itself out as an insurance specialist and that Cornett relied upon Hartan to communicate with various insurance carriers. (Second Am. Compl. ¶¶ 10 and 11.)

As with Brady, if Hartan was an agent of Cornett or acted beyond the scope of its agency with either Fireman's Fund or Lexington, and Hartan failed to handle the reported claim appropriately as alleged, then Hartan could be liable. Accordingly, this Court finds Hartan's motion to dismiss, like Brady's motion, must be denied at this time.

D.  <u>Status and Scheduling Conference</u>

Following entry of the plaintiff's second amended complaint, this Court vacated the scheduling order in effect in this action and set deadlines for the parties to file a meeting report with a proposed discovery plan. The defendant Brady filed a motion to amend scheduling order and extend all deadlines in this action. This Court entered an order taking notice of Brady's motion and indicated that the parties should meet for a status and scheduling conference following mediation that had been scheduled in this action. Following mediation, which was unsuccessful, the parties filed a supplemental Rule 26(f) report. In light of the rulings in this memorandum opinion in order, this Court finds it would be beneficial to conduct a status and scheduling conference in this

action with the remaining parties. Accordingly, the parties are DIRECTED to appear for a status and scheduling conference on **April 24, 2006 at 2:15 p.m.** at the Wheeling point of holding court.

Prior to the status and scheduling conference, the parties are DIRECTED to meet and confer regarding the issues that remain to be addressed as well as any proposed deadlines for any further discovery and pre-trial motions. In addition, the parties should have their calendars at the conference and be prepared to discuss new dates and deadlines for this action.

Finally, this Court will permit those out-of-town attorneys having their offices further than forty miles from the point of holding court to participate in the conference by telephone. However, any such attorney shall advise this Court at least three working days prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel and any pro se parties of his or her appearance by telephone; (2) confer with other out-of-town attorneys and any pro se parties to determine if they wish to appear by telephone; (3) advise the Court of the name of the attorney who will initiate the conference call and all such attorneys appearing by telephone; and (4) initiate a timely conference telephone call with such attorneys to the Court at 304/233-1120 at the time of the scheduled conference. If the attorneys cannot reach agreement as to the initiator of the call, this Court will make that determination.

## V. Conclusion

For the reasons stated above, this Court hereby DENIES Cornett's motion for summary judgment as to the declaratory judgment action on Policy I with Lexington but GRANTS as a matter of law Cornett's motion for summary judgment as to the declaratory judgment action on Policy II with Lexington. In addition, this Court GRANTS Lexington's cross-motion for summary judgment as to Policy I, DENIES Cornett's motion for summary judgment as to Fireman's Fund, GRANTS sua sponte summary judgment in favor of Fireman's Fund, DENIES Brady's motion to dismiss, DENIES Brady's motion for a more definite statement and DENIES Hartan's motion to dismiss. In addition, Brady's motion to amend the scheduling order and extend all deadlines in this action is DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    March 31, 2006


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE