IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CORNETT MANAGEMENT COMPANY, LLC,
a foreign corporation,

      Plaintiff,

v.                             Civil Action No. 5:04CV22
                                             (STAMP)

LEXINGTON INSURANCE COMPANY,
a foreign corporation,
FIREMAN'S FUND INSURANCE COMPANY,
a foreign corporation,
BRADY RISK MANAGEMENT, INC.,
a foreign corporation, and
HARTAN BROKERAGE, INC.,
a foreign corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON UNFAIR TRADE PRACTICES ACT CLAIMS,
DENYING LEXINGTON INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING BRADY RISK MANAGEMENT, INC.'S
MOTION FOR SUMMARY JUDGMENT AS MOOT**

I.   Procedural History

     In May 2002, Cornett Management Company ("CMC") was named as a defendant in a lawsuit styled Reynolds v. Hooters of America, Inc. in the Circuit Court of Kanawha County, Civil Action No. 02-C-1363, in which seven female employees (a/k/a "Hooters Girls") of the Charleston, West Virginia Hooters restaurant brought sexual harassment claims against the owners and managers of the restaurant. At the time the Reynolds suit was initiated, CMC was

insured by Lexington Insurance Company ("Lexington") under an employment practices liability insurance ("EPLI") policy. Pursuant to the EPLI, Lexington provided defense and indemnity to CMC in the Reynolds lawsuit. In April 2003, the Reynolds action was settled for an amount in excess of the EPLI policy limits. Thereafter, CMC instituted the present action against Lexington and other insurance companies and insurance brokers[1] alleging, inter alia, breach of contract, common law bad faith, and unfair trade practices. Currently before this Court are the fully briefed cross motions for summary judgment of CMC, Lexington, and Brady Risk Management, Inc. ("Brady Risk").

## II. Facts

The plaintiff, CMC, owns and operates restaurants, including a Hooters restaurant in Charleston, West Virginia ("Charleston Hooters"). In May 2002, seven female employees of the Charleston Hooters brought a sexual harassment suit against CMC. Lexington Insurance Company, a defendant in the present case, provided a defense and indemnity to CMC in the Reynolds lawsuit pursuant to Employment Practices Liability Insurance Policy No. 1321224. The EPLI policy was a "defense within limits" policy which provided that the costs of defense would be included within, not in addition

---

[1]Lexington is the only remaining defendant in this action. Hartan Brokerage and Fireman's Fund Insurance Company are no longer parties to this action. Additionally, this Court has been advised that CMC's claims against Brady Risk Management, Inc. have been compromised and settled.

to, the policy limits. In other words, the amount of insurance funds available to satisfy a settlement or judgment against CMC would be depleted by the cost of defending the action brought against CMC. The limit of CMC's insurance under the EPLI policy was $1 million.

Lexington retained the Chicago law firm of Baker & McKenzie to defend CMC in the Reynolds action and retained the West Virginia law firm of Farrell, Farrell & Farrell, PLLC as local counsel. Because Baker & McKenzie perceived a conflict of interest between CMC and Reynolds co-defendant, Joseph Hernandez, manager of the Charleston Hooters restaurant, Lexington retained the West Virginia law firm of Offutt, Fisher & Nord to represent Mr. Hernandez.

Settlement negotiations in the Reynolds matter began shortly after the complaint was filed and continued throughout the course of litigation. On June 10, 2002, approximately twenty days after the original Reynolds complaint was filed, Baker & McKenzie suggested a settlement range of $15,000.00 to $20,000.00 to counsel for the Reynolds plaintiffs. Plaintiffs' counsel declined to entertain the proposed settlement range, stating that the Reynolds case was "considerably more serious than that." On June 18, 2002, the Reynolds plaintiffs submitted a settlement demand of $3 million. On July 12, 2002, the plaintiffs increased their settlement demand to $4 million.

As the case progressed, Baker & McKenzie attorneys advised Lexington in various letters that defense costs would be a significant factor in the case and suggested that settlement authority equaling the coverage limits, minus costs and fees to date, may well be necessary to resolve the matter. Lexington authorized Baker & McKenzie to offer up to $250,000.00 towards settlement at a mediation held on October 24, 2002. The mediation was unsuccessful. Shortly thereafter, counsel for the Reynolds plaintiffs contacted the Baker & McKenzie attorneys and "threw out the number of $1.2 million as being something that might be reasonable." (Oct. 30, 2002 Letter from Attorney Andrew Boling to Lexington claims Adjustor Allyson Jones-Phillip at pg. 3.) CMC alleges that Lexington did not follow up on these discussions to attempt to negotiate a lower settlement demand which might have fallen within the policy limits. Additionally, CMC alleges that Lexington did not ask CMC if it would be willing to contribute some of its own assets to achieve a settlement of the Reynolds case.

Following the October 2002 mediation, discovery in the Reynolds case continued for approximately six months until a final settlement of $1,005,000.00 was reached in April 2003. The costs associated with defending the Reynolds action were significant. Because the applicable EPLI policy was a "defense within limits" policy, the amount of insurance funds available for paying the ultimate settlement was significantly diminished. The amount of

insurance funds that remained at the time of settlement equaled $205,000.00. Lexington tendered the $205,000.00 toward settlement and the remaining $800,000.00 was paid by Cornett Hospitality, LLC ("Cornett Hospitality").

Thereafter, CMC instituted the present suit in which it asserts claims against Lexington for breach of contract, common law bad faith, and unfair trade practices. Specifically, CMC alleges that because Lexington failed to attempt to settle for its remaining policy limits in the fall of 2002, CMC was forced to incur more than $1 million in additional settlement costs and attorney's fees.

### III. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir.

1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912

F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992).

In reviewing the supported underlying facts, all inferences must be

viewed in the light most favorable to the party opposing the

motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

## IV. Discussion

### A. CMC's Motion for Partial Summary Judgment on Unfair Trade Practices Act Claims

CMC contends that it is entitled to summary judgment on its

Unfair Trade Practices Act claims. In its motion for partial

summary judgment, CMC contends that Lexington violated multiple

provisions of the West Virginia Unfair Trade Practices Act

("UTPA"), W. Va. Code § 33-11-1 et seq., during its handling of the

sexual harassment claims asserted against CMC in the Reynolds

action. Specifically, CMC argues that Lexington violated

subsections (a)-(f) of West Virginia Code § 33-11-4(9) which

prohibit any person from performing with such frequency as to

indicate a general business practice any of the following:

> (a) misrepresenting pertinent facts or insurance policy
> provisions relating to coverages at issue;
>
> (b) failing to acknowledge and act reasonably promptly
> upon communications with respect to claims arising under
> insurance policies;
>
> (c) failing to adopt and implement reasonable standards
> for the prompt investigation of claims arising under
> insurance policies;

(d) refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; and

(f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

Additionally, CMC argues that Lexington violated an unspecified provision of the UTPA by retaining Baker & McKenzie as defense counsel in the Reynolds action without first seeking the consent of CMC.

CMC contends that it is entitled to summary judgment as to each of its claims under the UTPA. Following review of the underlying facts, this Court finds that summary judgment is inappropriate as to CMC's claims under subsections (a), (b), (d), (e), and (f) but that summary judgment as to CMC's claim under subsection (c) must be granted. Further, to the extent that CMC seeks summary judgment under the UTPA on the lack of consent issue, summary judgment is denied because the UTPA does not prohibit the alleged conduct.

1. West Virginia Code § 33-11-4(9)(a)-(b) and (d)-(f)

CMC alleges that Lexington violated the UTPA multiple times while handling the Reynolds claims and therefore has violated the UTPA with sufficient frequency to indicate a general business practice of committing such violations. Specifically, CMC contends

that Lexington violated West Virginia Code § 33-11-4(9)(d) by refusing to settle the Reynolds claims without conducting a reasonable investigation. CMC alleges that Lexington ignored information provided by Baker & McKenzie about the Reynolds claims and refused, against the advice of counsel, to make the policy limits available for settlement at the October 24, 2002 mediation. In response, Lexington argues that although Lexington gave initial settlement authority of $250,000.00 to Baker & McKenzie for the October 2002 mediation, additional settlement authority could have been secured upon request of Baker & McKenzie. CMC also contends that Lexington violated subsection (f) of West Virginia Code § 33-11-4(9) by failing to make the policy limits available for settlement when it became reasonably clear that the majority of CMC's coverage would likely be consumed by defense costs before trial. Lexington responds that the settlement demands of the Reynolds plaintiffs were consistently in the multi-million dollar range and therefore, there was never an opportunity during negotiations to settle the case within the $1 million limits of the policy.

Summary judgment is inappropriate on CMC's claims under subsections (d) and (f) because "whether an insurer refused to pay a claim without conducting a reasonable investigation based upon all available information under West Virginia Code § 33-11-4(9)(d) (2002) and whether liability is reasonably clear under West

9

Virginia Code § 33-11-4(9)(f) (2002) ordinarily are questions of fact for the jury." Jackson v. State Farm Automobile Ins. Co., 600 S.E.2d 346 (W. Va. 2004). CMC asserted at oral argument that the holding in Jackson is inapplicable here because this case is not an ordinary one in which jurors could draw different conclusions from the evidence.

CMC argues that Jackson is distinguishable because Lexington has made "actual admissions." CMC points to the deposition of Lexington representative James Costanzo in which Mr. Costanzo admitted that Lexington has not adopted standards for the handling and investigation of claims and that Lexington always retains Baker & McKenzie as defense counsel in multi-party or class action litigation. Neither of these statements, however, speaks to whether Lexington conducted a "reasonable investigation" of the Reynolds claims or whether liability was "reasonably clear." Thus, these statements do not constitute an admission of liability as to subsections (d) and (f) of West Virginia Code § 33-11-4(9). Accordingly, this Court finds nothing extraordinary about the facts in this case that would warrant departing from the general rule that violations of subsections (d) and (f) are ordinarily questions of fact for the jury.

Because subsections (d) and (f) were the only subsections of West Virginia Code § 33-11-4(9) at issue in Jackson, the Supreme Court of Appeals of West Virginia did not address whether

10

violations of other subsections of the statute also ordinarily involve questions of fact for the jury.  Nonetheless, because CMC has failed to show that no genuine issues of material fact remain to be resolved at trial as to its claims pursuant to West Virginia Code § 33-11-4(9)(a), (b), and (e), summary judgment must also be denied on those claims.

CMC argues that Lexington misrepresented pertinent facts relating to coverage in violation of subsection (a) of West Virginia Code § 33-11-4(9) by allegedly representing to CMC that the EPLI policy did not cover some of the Reynolds claims and that Lexington could seek reimbursement for the defense costs it paid for the defense of non-covered claims.  Lexington responds that assuming, arguendo, that it misrepresented material facts, CMC never suffered any injury from the misrepresentation because Lexington paid the entirety of the policy limits and did not seek reimbursement from CMC for any portion of defense costs.  Further, CMC argues that Lexington violated subsections (b) and (e) by allegedly sending a reservation of rights letter to CMC in an untimely manner.  Lexington responds that an immediate, aggressive approach to defending CMC against the Reynolds claims was undertaken.

Where a reasonable jury could draw different conclusions as to liability from the facts in evidence, summary judgment must be denied.  Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir.

11

1951).  In this case, CMC's claims under subsections (a), (b), and (e) present genuine factual issues that can properly be resolved only by a finder of fact.  Whether CMC had a general business practice of misrepresenting pertinent facts [W. Va. Code §33-11-4(9)(a)], failing to act reasonably promptly in response to communications [W. Va. Code §33-11-4(9)(b)], or failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed [W. Va. Code §33-11-4(9)(e)] are genuine issues of material fact that may reasonably be resolved in favor of either party on the evidence in this case. Accordingly, summary judgment must be denied as to those claims.

    2.   West Virginia Code § 33-11-4(9)(c)

In its complaint, CMC alleges that Lexington violated subsection (c) of West Virginia Code § 33-11-4(9) by failing to adopt and implement reasonable standards for the prompt investigation of claims.  CMC contends that it is entitled to summary judgment on this claim because Lexington's corporate representative, James Costanzo, admitted in his deposition that Lexington has no formal policies as required by the UTPA.  Despite Lexington's response that "there is not a single piece of evidence —- documentary, testimonial, or otherwise —- that can be produced by any party to this matter that could even be remotely construed to support this baseless allegations (sic)," Lexington's representative testified to the following in his deposition:

Q.    Let me ask you, as the corporate representative, then, for Lexington, are you familiar with the policies, procedures and guidelines of Lexington regarding the handling of claims?

A.    There are no formal policies, procedures or guidelines with respect to handling claims of Lexington.

Q.    Does Lexington have written guidelines regarding the investigation and handling of claims under insurance policies?

A.    Nothing in writing, no.

Q.    Has that been true for the entire duration of your tenure with Lexington?

A.    Yes.

Q.    So, at no time since you've been with Lexington has the company had a claims manual or a set of guidelines, or by whatever name they might be known, that's either on a computer system or in a manual like what's in front of you there that is in a central office or something, that many people might be able to access or at their desk or wherever, there's no written or computerized format of written information available to claims handlers dictating what the guidelines are for the company in the handling and investigation of claims?

A.    Correct.  There are no such guidelines.

(Dep. of James Costanzo at pgs. 19-20.)  At oral argument, counsel for Lexington conceded that Lexington had no written standards regarding the prompt investigation of claims but argued that Lexington had verbal, unwritten standards.

The UTPA does not explicitly require that the "reasonable standards" that must be adopted and implemented pursuant to subsection (c) be in writing.  Nonetheless, it is somewhat difficult to imagine how, in the absence of a written manual,

13

standards would be disseminated to claims adjustors and how an insurance company would hold employees accountable for knowledge of such standards.  The Supreme Court of Appeals of West Virginia has not, to date, addressed the issue of whether West Virginia Code § 33-11-4(9)(c) requires written standards or whether it permits unwritten ones.  Additionally, there is a dearth of caselaw, West Virginia or otherwise, that speaks to whether the "reasonable standards" envisioned by the UPTA or similar statutes must be in writing.

It is unnecessary, however, for this Court to decide whether the UPTA requires insurance companies to adopt written standards because, in this case, the testimony of Lexington's representative reveals that Lexington did not have any standards, written or unwritten, for the prompt investigation of claims.  Indeed, Mr. Costanzo stated in his deposition that Lexington has "expectations" regarding the handling of claims by examiners but does not have anything "formal in place to bring a person to that standard." Additionally, Mr. Costanzo admitted that Lexington has "no formal timeline" for acknowledging the receipt of a notice of claim.  Mr. Costanzo also stated that he was not aware that West Virginia law imposed a specific obligation on insurance companies to acknowledge notices of claims within a certain time period.  See W. Va. C.S.R. § 114-14-5 (requiring acknowledgment of notices of claims within fifteen working days).

After reviewing the evidence in the record in a light most favorable to Lexington, this Court must conclude that no genuine issues of material fact remain to be resolved regarding Lexington's alleged failure to adopt reasonable standards. Lexington has not presented any evidence to rebut Mr. Costanzo's testimony regarding its standards, or lack thereof, for the prompt investigation of claims. Accordingly, this Court finds that Lexington failed to adopt and implement reasonable standards for the prompt investigation of claims and that CMC is entitled to partial summary judgment as to its claim under West Virginia Code § 33-11-4(9)(c).[2]

### 3. Lack of Consent

Finally, CMC argues in the "statement of facts" section of its motion for partial summary judgment that it did not consent to Lexington's retention of the law firm of Baker & McKenzie as defense counsel in the Reynolds action. CMC contends that under the EPLI policy,[3] it had a right to consent to the selection of defense counsel and that Lexington unilaterally retained Baker & McKenzie without first seeking CMC's consent. CMC did not plead this claim in its amended complaint. Nonetheless, Lexington

---

[2]Of course, as counsel for CMC recognized at oral argument, CMC still has the burden of proving at trial whether Lexington's violation of West Virginia Code § 33-11-4(9)(c) proximately caused damages to CMC and the amount of any such damages.

[3]The EPLI policy provided: "We [Lexington] have the right to select defense counsel with the consent of the Insured [CMC], which consent shall not be unreasonably withheld."

received notice of the lack of consent allegation via discovery as early as April 18, 2005, when CMC deposed Lexington representative Bob McGrath. Thus, consideration of the lack of consent argument here will not unduly prejudice Lexington.

CMC's motion for partial summary judgment requests judgment only as to CMC's UTPA claims. In its motion, CMC does not argue that Lexington's alleged failure to seek CMC's consent to selection of defense counsel violates the UTPA. Nonetheless, at oral argument, CMC's counsel asserted that the alleged lack of consent constitutes both a violation of the UTPA and a breach of contract. Because CMC has not moved for summary judgment as to its breach of contract claim, it is unnecessary to address here whether Lexington's alleged failure to seek consent was a violation of the EPLI policy.

As stated above, the UPTA prohibits insurance companies from committing various "unfair claim settlement practices" with such frequency as to indicate a general business practice. However, the UTPA does not make it an unfair claim settlement practice for an insurer to breach an insurance contract or for an insurer to hire defense counsel without the consent of the insured. Therefore, to the extent that CMC seeks partial summary judgment on the lack of consent issue, judgment is denied because the UPTA does not prohibit the alleged conduct.

B.    Lexington's Motion for Summary Judgment

Lexington seeks summary judgment as to each of the plaintiff's claims against it in this action, namely breach of contract, bad faith, and unfair trade practices.  In support of its motion for summary judgment, Lexington argues that (1) Lexington did not breach its duty to defend and indemnify CMC by causing  Baker & McKenzie to engage in extensive and unnecessary discovery and litigation disputes; (2) Lexington never had an opportunity to settle the Reynolds case within the policy limits; (3) Lexington properly defended and indemnified CMC, conducted a prompt and reasonable investigation of the claims against CMC, and employed reasonable standards of investigating the claims against CMC; and (4) Lexington did not act maliciously.  Additionally, Lexington contends that CMC cannot establish that it sustained any damages as a result of Lexington's alleged conduct because Cornett Hospitality issued the final settlement check to the Reynolds plaintiffs rather than CMC.  CMC responds that Lexington breached the insurance policy by failing to seek the consent of CMC regarding the selection of defense counsel, that Lexington is guilty of acting in bad faith during the defense of the Reynolds action because there is substantial evidence that Lexington breached its duty of good faith and fair dealing, that CMC has presented extensive evidence that Lexington violated the UTPA while handling the Reynolds claims, and that CMC can establish actual malice on the part of

17

Lexington such that CMC is entitled to punitive damages. Further, CMC responds that it has suffered damages as a result of Lexington's conduct and that Lexington's argument to the contrary ignores the corporate relationship between Cornett Hospitality and CMC.

Following review of the underlying facts and construing all inferences must in a light most favorable to the party opposing the motion, this Court finds that Lexington's motion for summary judgment as to each of CMC's claims must be denied. Lexington has failed to establish that no genuine issues of material fact remain to be resolved at trial. In this case, deciding whether Lexington breached its contract with CMC, acted in bad faith while defending the <u>Reynolds</u> claims, or committed unfair trade practices pursuant to West Virginia Code § 33-11-4(9)(a)-(b) and (d)-(f) requires the resolution of substantial questions of fact. Accordingly, Lexington's motion for summary judgment is denied.

C.  <u>Brady Risk's Motion for Summary Judgment</u>

This Court has been recently advised that CMC's claims against Brady Risk have been compromised and settled. Therefore, Brady Risk's motion for summary judgment is moot.[4]

---

[4]This Court contemplates that a proposed dismissal order as to Brady Risk Management, Inc. will be submitted for entry or that this Court will enter its own dismissal order based upon the representations made to the Court regarding settlement.

18

## V.  Conclusion

For the above-stated reasons, Cornett Management Company, LLC's motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART, Lexington Insurance Company's motion for summary judgement is DENIED, and Brady Risk Management, Inc.'s motion for summary judgment is DENIED AS MOOT.  Additionally, Lexington's motion for leave to file a memorandum in excess of the page limitation in support of its amended reply to plaintiff's response to defendant Lexington Insurance Company's motion for summary judgment is GRANTED because such memorandum was considered herein.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    August 8, 2007


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE