IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CORNETT MANAGEMENT COMPANY, LLC,
a foreign corporation,

    Plaintiff,

v.                                  Civil Action No. 5:04CV22
                                               (STAMP)
LEXINGTON INSURANCE COMPANY,
a foreign corporation,
FIREMAN'S FUND INSURANCE COMPANY,
a foreign corporation,
BRADY RISK MANAGEMENT, INC.,
a foreign corporation, and
HARTAN BROKERAGE, INC.,
a foreign corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT LEXINGTON INSURANCE
COMPANY'S MOTION TO VACATE**

I. <u>Procedural History</u>

Plaintiff, Cornett Management Company ("CMC") filed a motion for partial summary judgment in the above-styled civil action on its Unfair Trade Practices Act ("UTPA") claims. Defendants, Lexington Insurance Company ("Lexington") and Brady Risk Management, Inc. ("Brady Risk") also filed motions for summary judgment. Oral argument was held before this Court on July 24, 2007 on CMC's fully briefed motion for partial summary judgment and the defendants' fully briefed motions for summary judgment. On August 8, 2007, this Court issued a memorandum opinion and order granting in part and denying in part CMC's motion for partial summary judgment on its UTPA claims, denying Lexington's motion for

summary judgment, and denying as moot Brady Risk's motion for summary judgement.[1]  Specifically, this Court held that during the 2002-2003 time period relevant to this case[2] Lexington failed to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" as required by West Virginia Code § 33-11-4(9)(c).

On August 9, 2007, five days before a jury trial in this case was scheduled to take place, the parties advised the Court that CMC's claims against Lexington had been compromised and settled. Although CMC and Lexington reached a resolution regarding all issues that were set for trial, counsel for Lexington expressed the desire to file, prior to the entry of a dismissal order in this case, a motion to vacate this Court's memorandum opinion and order granting in part and denying in part plaintiff's motion for partial summary judgment.  Accordingly, this Court entered an order vacating the scheduled trial, denying as moot all pending motions, and establishing a deadline for Lexington to file a motion to vacate.  Lexington has now filed its motion to vacate and CMC has responded that it does not oppose the motion.  The parties have

---

[1] Before ruling on the merits of Brady Risk's motion for summary judgment, this Court was advised that CMC's claims against Brady Risk were compromised and settled. Accordingly, this Court denied Brady Risk's motion for summary judgment as moot.

[2] CMC was insured by Lexington under an employment liability policy, Policy Number 1321224, which covered claims made between May 4, 2002 and May 4, 2003.

advised the Court that the settlement reached between CMC and Lexington is not contingent upon a favorable ruling on Lexington's motion to vacate. This Court has considered Lexington's motion and the response thereto and concludes, for the reasons stated below, that Lexington's motion to vacate must be denied.[3]

## II. Applicable Law

Lexington brings its motion to vacate pursuant to Federal Rule of Civil Procedure 60(b). Specifically, Lexington relies on Federal Rule of Civil Procedure 60(b)(5) and on Federal Rule of Civil Procedure 60(b)(6), which provide in relevant part that a final order may be vacated when "(5) . . . it is no longer equitable that the judgment should have prospective application" or for "(6) any other reason justifying relief from the operation of the judgment."

Subsection (5) of Rule 60(b) applies to any judgment that has a prospective effect as opposed to a judgment that provides a present remedy for a past wrong. Wright and Miller, Federal Practice and Procedure § 2863. To obtain relief under Rule 60(b)(5), the judgment must have a prospective effect or require

---

[3]This Court finds a second recitation of the facts in this case unnecessary and relies on the facts as outlined in its August 8, 2007 memorandum opinion and order granting in part and denying in part CMC's motion for partial summary judgment on its UTPA claims, denying Lexington's motion for summary judgment, and denying as moot Brady Risk's motion for summary judgment.

continuing oversight by the court which rendered the judgment. See Schwartz v. United States, 129 F.R.D. 117 (D. Md. 1990).

Subsection (6) of Rule 60(b) is a "catch-all" provision which permits relief for "any other reason justifying relief from the operation of the judgment." A Rule 60(b)(6) motion must be based upon some reason other than those stated in subsections (1)-(5) of Rule 60(b). 12-60 Moore's Federal Practice -- Civil § 60.48. Additionally, a Rule 60(b)(6) motion may not be granted absent "extraordinary circumstances." See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988); Pierce v. United Mine Workers Welfare and Retirement Fund, 770 F.2d 449 (6th Cir. 1985).

Lexington's motion to vacate pursuant to Rules 60(b)(5) and (6) is essentially a motion for reconsideration of this Court's ruling granting in part plaintiff's motion for partial summary judgment. "[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence . . . . Where evidence is not newly discovered, a party may not submit that evidence in support of the motion for reconsideration." Harsco Corp. v. Zlotnicki, 779 F.2d 907, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986). Moreover, a motion for reconsideration should not be used to reiterate arguments previously made or as a vehicle to present authorities available at the time of the first decision -- a party should not file such a motion "to ask the Court to rethink what the

4

Court had already thought through -- rightly or wrongly." Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983); see also Robertson v. Yamaha Motor Corp., USA, 143 F.R.D. 194, 196 (S.D. Ill. 1992). Rather, "a motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law or where the party produced new evidence that could not have been obtained through the exercise of due diligence." Prudential Securities, Inc. v. LaPlant, 151 F.R.D. 678, 679 (D. Kan. 1993).

## IV. Discussion

Lexington argues that this Court should vacate its August 8, 2007 memorandum opinion and order insofar as the opinion granted in part CMC's motion for partial summary judgment on its claim pursuant to West Virginia Code § 33-11-4(9)(c). Lexington enumerates three reasons that its motion to vacate should be granted: (1) that Lexington was "deprived" of the right to appeal the decision or to file a motion to alter or amend the judgment because the case was settled prior to trial and, therefore, it "could be faced with a judgment against it with potential detrimental effects far broader than this case;" (2) that Lexington's corporate representative James Catanzano[4] assumed the

---

[4] This Court's August 8, 2007 memorandum opinion and order erroneously referred to Lexington's corporate representative as "James Costanzo." The representative's name is now correctly spelled "James Catanzano." This Court apologizes for the error.

5

questions he was asked at his deposition regarding standards related only to written, not verbal, standards; and (3) that Lexington did in fact have verbal standards for the prompt investigation of claims in 2002-2003.

Lexington's arguments are without merit. First, Lexington's contention that it was somehow "deprived" of the right to appeal or to file a motion to alter or amend the judgment is curious to say the least. The settlement between Lexington and CMC was voluntarily made by those parties and announced to the Court for the first time five days before trial -- just prior to a scheduled hearing on certain pending motions in limine. The Court had no role in the settlement negotiations nor was the Court required to approve the settlement. Additionally, Lexington merely speculates that the decision of this Court "may have been vacated or reversed once evidence was produced regarding Lexington's verbal standards for the prompt investigation of claims." (Def.'s Mot. to Vacate 3.) Lexington did not present sufficient evidence of any standards to survive summary judgment. Thus, even if this case had not been voluntarily settled, Lexington would not have been able to argue or to present evidence at trial that it did in fact have the requisite standards in place in 2002-2003.

Furthermore, Lexington's argument that this Court's ruling "could" cause Lexington to suffer "potential detrimental effects far broader than this case" is speculative, at best. No certainty

exists that the issue regarding Lexington's compliance with West Virginia Code § 33-11-4(9)(c) in 2002-2003 will arise in another case or even another non-litigation situation. Indeed, this Court's ruling was based on a narrow set of facts within a discrete period of time.[5] Another court faced with the general issue of standards under West Virginia Code § 33-11-4(9)(c) might give this decision some precedent, little precedent, or no precedent at all. Lexington merely raises concerns in uncertain terms regarding the possible adverse ramifications of this decision. "Virtually every court order causes at least some reverberation into the future, and has, in that literal sense, some prospective effect." Schwartz v. United States, 129 F.R.D. 117 (D. Md. 1990)(quoting Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988)). However, the fact that a court's ruling may have continuing consequences does not necessarily mean that it has "prospective application" for the purposes of Federal Rule of Civil Procedure 60(b)(5). Id. Rather, an order is said to have "prospective application" when it is "executory" or requires continuing oversight by the Court. Id. In this case, this Court's

---

[5]Further, in light of settlement, the issue of whether Lexington had appropriate standards in place in 2002-2003 is moot. See e.g. United Airlines, Inc. v. McDonald, 432 U.S. 385, 400 (1977) (Powell, J., dissenting)("The settlement of an individual claim typically moots any issues associated with it."). Because of the discrete time period that was at issue in this case, Lexington's lack of standards in 2002-2003 is not a "wrong capable of repetition yet evading review" and no exception to the mootness doctrine applies.

decision on the parties' summary judgment motions does not require any continuing supervision, and Lexington has not otherwise shown that the ruling will have the kind of inequitable prospective application necessary to justify relief under Rule 60(b)(5).

Second, Lexington's argument that Mr. Catanzano assumed the questions at his deposition referenced written standards, rather than verbal ones, is unavailing. Assuming that such confusion occurred at the deposition, the time to correct the confusion was prior to this Court's ruling on CMC's partial motion for summary judgment. Instead, Lexington waited until after this Court ruled on CMC's partial motion for summary judgment and after the parties had settled all issues scheduled for trial to present any evidence regarding the existence of standards. It was not until August 22, 2007 that, in conjunction with its motion to vacate, Lexington filed affidavits in which three Lexington employees attest that Lexington had verbal standards in place during 2002-2003. In the affidavits, James Catanzano (Lexington's corporate representative), Robert McGrath (2002-2003 co-claims manager for Lexington's Employment Liability Practices Unit), and Philip McGinty (2002 claims examiner for Lexington), aver that Lexington had verbal standards for the prompt investigation of claims in 2002-2003.

This after-the-fact evidence of what Mr. Catanzano, Mr. McGrath, and Mr. McGinty "would" or "should" have said in response to deposition questions regarding standards is too little, too

8

late. Lexington has made no showing that this evidence is newly discovered and could not have been presented at summary judgment. The fact that Mr. Catanzano assumed the questions posed by CMC's counsel at his deposition dealt with written standards, while perhaps unfortunate for Lexington, does not create the kind of inequity that would justify vacating this Court's decision.

Lexington's final argument, that it did in fact have verbal standards for the prompt investigation of claims, does not convince this Court that vacatur is warranted in this case. It is far from certain that timely evidence of the existence of verbal standards would have saved Lexington from summary judgment on CMC's claim under West Virginia Code § 33-11-4(9)(c). As this Court noted in its August 8, 2007 memorandum opinion and order, it is unclear whether the "reasonable standards" required by the UTPA in 2002-2003 were required to be in writing. This Court found it unnecessary to decide the issue in its previous opinion because the evidence on the record revealed that Lexington had no standards, written or unwritten, for the prompt investigation of claims. Nonetheless, this Court noted that "it is somewhat difficult to imagine how, in the absence of a written manual, standards would be disseminated to claims adjustors and how an insurance company would hold employees accountable for knowledge of such [verbal] standards." Cornett Management Co., LLC v. Lexington Ins. Co., 2007 WL 2317743, at *6 (N.D. W. Va. Aug. 8, 2007).

Assuming, for the sake of argument, that verbal standards were sufficient to satisfy the requirements of West Virginia Code § 33-11-4(9)(c) in 2002-2003, the time for Lexington to produce evidence that it had adopted and implemented standards in compliance with the UTPA was at the summary judgment stage. "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256. Rather than presenting specific facts in response to CMC's motion for partial summary judgment as to its claim that Lexington lacked reasonable standards for the prompt investigation of claims, Lexington merely stated in its response brief that "there is not a single piece of evidence -- documentary, testimonial, or otherwise -- that can be produced by any party to this matter that could even be remotely construed to support this baseless allegations (sic)." (Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. 14.) Also, Lexington did not present any evidence at oral argument, as opposed to the statements of its defense counsel, that Lexington had the necessary standards in place in 2002-2003.

Lexington had ample opportunities to present specific facts on the issue of standards. Indeed, Lexington filed no less than four memoranda in the course of briefing CMC's partial motion for

summary judgment and its own motion for summary judgment.[6]  Yet, in the course of briefing, Lexington never identified any standards, written or verbal, that it had in place for the prompt investigation of claims.  Based on the record made to this Court prior to its August 8, 2007 decision on the motions for summary judgment, no genuine issue of material fact existed regarding Lexington's failure to adopt <u>any</u> standards for the prompt investigation of claims.[7]  Lexington has failed to show that "extraordinary circumstances" exist in this case that would warrant vacatur pursuant to Rule 60(b)(6).  Moreover, if the Court were to vacate judgment in this case following an arms length settlement by the parties, then other rulings made prior to a settlement that resolves the claims at issue would (or could) be subject to possible vacatur.  This Court declines to invite such a practice.

---

[6]Lexington filed a twenty-four page response to CMC's motion for partial summary judgment, a thirty-one page memorandum in support of its own motion for summary judgment, and a thirty page reply to CMC's response to its motion for summary judgment.  Also, Lexington filed a thirty-three page amended reply to plaintiff's response to Lexington's motion for summary judgment which was considered by this Court even though an amended reply is not provided for by the local rules.

[7]In addition to requiring that insurance companies adopt and implement standards for the prompt investigation of claims, West Virginia Code § 33-11-4(9)(c) requires that the standards adopted be reasonable.  Lexington admits that the issue of reasonableness is moot in light of the settlement reached between the parties.

## V. Conclusion

For the reasons stated above, this Court finds that Lexington's motion to vacate must be DENIED. Additionally, this Court notes that the parties have submitted a proposed dismissal order as to all of CMC's claims against Lexington and have indicated that this Court may enter the dismissal order after ruling on Lexington's motion to vacate. Accordingly, a separate dismissal order as to CMC's claims against Lexington will be entered in this case. At a status conference held on September 5, 2007, the parties indicated that they would promptly file a proposed dismissal order as to CMC's claims against Brady Risk. This case cannot be finally dismissed and retired from the docket of this Court until receipt and entry of the proposed order dismissing CMC's claims against Brady Risk.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: September 11, 2007

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE